**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JANINE SENANAYAKE | : | |
| 6340 Autumn Crest Court | : | |
| Westerville, Ohio 43082 | : | |
| | : | |
| Plaintiff | : | Case No. 2:15-cv-65 |
| v. | : | |
| | : | Judge |
| DELAWARE COUNTY | : | |
| BOARD OF COMMISSIONERS | : | |
| 101 North Sandusky Street | : | |
| Delaware, Ohio 43015 | : | **COMPLAINT** |
| | : | |
| and | : | |
| | : | **JURY DEMAND ENDORSED HEREON** |
| DELAWARE COUNTY | : | |
| SHERIFF'S OFFICE | : | |
| 149 North Sandusky Street | : | |
| Delaware, Ohio 43015 | : | |
| | : | |
| Defendants | : | |

**COMPLAINT**

I.  **PRELIMINARY STATEMENT**

This action seeks back pay and benefits, front pay and benefits, in an amount to be determined at trial, compensatory damages, liquidated damages, punitive damages, pre-judgment interest, post-judgment interest, costs, attorneys' fees and any and all other relief, which the Court deems just and appropriate for the Defendant's violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., and Ohio law, O.R.C. § 4112.02(A), *et seq*., for the discriminatory, harassing, and retaliatory treatment Plaintiff Janine Senanayake ("Plaintiff") was

subjected to during her employment with the Delaware County Sheriff's Office, ultimately resulting in her termination.

## II. JURISDICTION AND VENUE

1. This action is brought pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.,* the ADA, 42 U.S.C. § 12101, *et seq.*, and Ohio law, O.R.C. § 4112.02(A), *et seq.*

2. Jurisdiction is conferred upon this Court by 28 U.S.C. §1331 which provides for original jurisdiction of Plaintiff's claims to secure equitable and other relief arising under the laws of the United States.

3. This Court's jurisdiction is also predicated upon 28 U.S.C. §1367 as this Complaint raises claims pursuant to the laws of Ohio over which this Court maintains supplemental subject matter jurisdiction.

4. Venue is proper in this forum pursuant to 28 U.S.C. §1391 because Defendant resides in the Southern District of Ohio and all or a substantial part of the events giving rise to Plaintiff's claims occurred in the Southern District of Ohio.

5. Plaintiff has exhausted her administrative remedies by first filing a complaint with the U.S. Equal Employment Opportunity Commission. On or about October 11, 2013 Plaintiff received her Right to Sue Letter dated October 9, 2013 (Exhibit A, attached).

## III. PARTIES

6. Plaintiff is a citizen of the United States and resides in the Southern District of Ohio. At all times material herein Plaintiff worked within the Southern District of Ohio.

7. At all times relevant herein, the Plaintiff was an employee of Defendants as defined in Title VII, the ADA, and Ohio law.

8. At all times relevant herein, Defendant Delaware County was an Ohio County. Delaware County is a "body politic and corporate" by virtue of O.R.C. §301.22 and pursuant to those statutes is known and distinguished by the name Delaware County, Ohio (hereinafter "Delaware County").

9. Delaware County is an "employer" within the meaning of Title VII, the ADA, and Ohio law.

10. Defendant Delaware County employs more than fifteen persons.

11. Defendant Delaware County Board of Commissioners (hereinafter "the Board of Commissioners") is the policy-determining body of the Delaware County and may be sued pursuant to O.R.C. §302.12.

12. The Board of Commissioners is an "employer" within the meaning of Title VII, the ADA, and Ohio law.

13. The Board of Commissioners employs more than fifteen persons.

14. Defendant Delaware County Sheriff's Office is a subunit of Delaware County and a constituent institution of the Board of Commissioners.

15. Defendant Delaware County Sheriff's Office is an "employer" within the meaning of Title VII, the ADA, and Ohio law.

16. Defendant Delaware County Sheriff's Office employs more than fifteen persons.

## IV. STATEMENT OF FACTS

17. Plaintiff worked for Defendant as a Correction's Officer from September 11, 2010 to approximately the spring of 2011, and as a Deputy Sheriff from approximately the spring of 2011 to April 24, 2012.

18. At all times during her employment, Plaintiff was qualified to perform the essential functions of her job, and performed her duties competently.

19. However, soon after she started working for Defendant, she became the subject of sexually harassing behavior from another Deputy Sheriff, Rashad Pitts.

20. The first time Plaintiff ever met Officer Pitts, he was booking an inmate into the county jail and Plaintiff was a Correction's Officer working the metal detector.

21. Upon seeing Plaintiff, Officer Pitts exclaimed, "someday she is going to have my babies." This comment was heard by several of Defendant's employees, including Jesse Jackson and Etta Sevier, as well as numerous inmates.

22. Plaintiff was offended by the comments, but because she was new to the job she chose to ignore them thinking it would pass and Officer Pitts' conduct was merely an anomaly.

23. Officer Pitts made the same comment several more times while Plaintiff worked as a Correction's Officer. In addition, he told Jesse Jackson that he wished Plaintiff would just go out with him. But his harassment intensified significantly when Plaintiff was promoted to Deputy Sheriff in early 2011.

24. Now seeing Plaintiff on a daily basis, Officer Pitts had the opportunity to make the same comment he made when he first met Plaintiff – that "she was going to have his baby" – on numerous occasions, including at the station, in front of other officers, in the patrol cars, and at court while the deputies were waiting for trial.

25. Additionally, on a ride-along with Officer Pitts, Plaintiff was made to feel uncomfortable by Officer Pitts' repeated advances. He told Plaintiff that she was really pretty. He asked if she would be willing to go to parties, or clubs, or out to dinner. Plaintiff respectfully declined his advances.

26. Unfortunately, due the close work proximity, Plaintiff was unable to avoid the constant and insistent sexual advances of Officer Pitts.

27. Being in such close proximity with Officer Pitts and his constant asking her to go out or repeatedly saying she was "going to have his babies" (an unmistakable indication that he wanted to engage in sexual intercourse with her thereby impregnating her) created a hostile work environment that was sufficiently pervasive and severe that it was difficult to concentrate on her work and do her job thereby altering the terms and conditions of her employment.

28. Eventually Plaintiff built up the courage to confront Officer Pitts about his harassing and demeaning behavior. On one of the occasions when he referred to her as the future mother of his children, Plaintiff told Officer Pitts to stop with his comments and behavior.

29. Officer Pitts' behavior did not stop, which made Plaintiff anxious about even going to work.

30. On one occasion during the summer of 2011, Plaintiff was off duty and driving to Polaris to meet a friend for dinner. She was pulled over by Officer Pitts. Officer Pitts said to Plaintiff, "you are a hot piece of ass out of uniform." Plaintiff became irritated with Officer Pitts, and said, "you know you are on camera, what are you doing?" Officer Pitts explained to Plaintiff that he had shut his dash camera off before approaching her vehicle.

31. In September or October of 2011, Plaintiff complained to Sergeant John Burke about Officer Pitts' treatment of her and explained that it made her feel uncomfortable and was interfering with her work.

32. Sergeant Burke told Plaintiff that Officer Pitts was his friend and that he did not intend to "get in the middle of it" like it was some sort of lovers quarrel and not blatant sexual

5

harassment. Sergeant Burke failed to take any action, reasonable or otherwise, to prevent or correct Officer Pitts' sexually harassing behavior.

33. The sexually harassing behavior continued, so in approximately November of 2011, Plaintiff went outside of her chain of command and complained to Deputy Chief John Petrozzi. Deputy Chief Petrozzi assured Plaintiff that he would address the issue with Officer Pitts and Sergeant Burke. Deputy Chief Petrozzi went on to explain that if anyone treated his daughter the way Officer Pitts had treated Plaintiff, he would take a Louisville Slugger to him.

34. A few days later, Plaintiff was approached by an angry Officer Pitts. Officer Pitts told Plaintiff, "snitches get stitches, and end up in ditches."

35. Officer Pitts then told Plaintiff that if she were screaming over the radio in her patrol car for backup, he would take his time getting to her location. Officer Pitts told Plaintiff that at his previous job with the Morrow County Sheriff's Department, one of the deputies complained about him. After the complaint, Officer Pitts took his time responding to the same deputy's radio call for backup and the officer who complained about Officer Pitts was severely beaten.

36. Officer Pitts' threats were clear retaliation for Plaintiff complaining about his sexual harassment.

37. Plaintiff was terrified by Officer Pitts' threats. She again complained to Sergeant Burke, but Sergeant Burke again took no action to halt Officer Pitts' behavior.

38. Instead, after her complaints, Plaintiff's supervisors began targeting her for mistreatment. For example, Sergeant Burke sent back one of Plaintiff's police reports because she used the contraction "isn't" instead of writing out the words "is not."

6

39. On April 10, 2012, Plaintiff was attending self defense training provided by the Ohio Highway Patrol when she injured her knee during one of the exercises.

40. Plaintiff went to her doctor who informed her that she had a "kissing contusion," where two bones in her knee were rubbing together. The doctor gave Plaintiff a doctor's excuse recommending that she stay out of work for one month. Because Plaintiff did not want to miss work, she asked her doctor if he would reevaluate her again in two weeks.

41. On April 24, 2012, the day of her follow up doctor's appointment, Plaintiff received a call from an employee for Defendant asking her to stop by the station to pick up Family and Medical Leave Act paperwork regarding her injury.

42. When she arrived at the office she was informed that Captain Scott Vance wanted to see her.

43. Plaintiff met with Captain Vance, who was acting sheriff, Captain Kevin Savage, and Patty Freeman. Immediately, Captain Vance said to Plaintiff that she "needed to resign."

44. Plaintiff was shocked, and asked for an explanation. Captain Vance claimed he did not want to get into details, but eventually provided Plaintiff with a piece of paper chronicling 26 alleged performance violations that Plaintiff had committed. Besides the two disciplinary actions detailed below, Plaintiff had never been counselled, or even told, about any of these alleged disciplinary violations.

45. Plaintiff was disciplined on two occasions during her employment with Defendant. First, in October of 2011, Plaintiff was issued a disciplinary write up because she bumped a utility pole in the station parking lot with a police cruiser. The impact caused a minor crack to the cruiser's license plate cover. Nevertheless Plaintiff self-reported the incident to her supervisor. She accepted the write up and acknowledged her mistake.

46. However, Plaintiff was only one of several of Defendant's deputies that had been involved in traffic accidents in Delaware County Sheriff's Office cruisers in 2011. But Plaintiff's treatment was grossly disproportionate. For example, Cham Miller totaled one cruiser and crashed another and was placed on probation.

47. In February of 2012, Plaintiff was suspended for one day for failing to appear in traffic court. Plaintiff was confused because the court date had been changed three times, but accepted her punishment and acknowledged her mistake.

48. Upon information and belief, another male officer, Derrick Keller, also failed to appear in traffic court on the same ticket, but he was not disciplined.

49. Numerous deputies were suspended during her employment, and some deputies were suspended on multiple occasions.

50. The remaining items on the list of alleged performance violations included fabrications, embellishments, and allegations of behavior that did not result in discipline when done by other male officers.

51. Other than the two violations discussed above, none of the alleged performance violations were recorded contemporaneous with the events they were meant to reflect, nor were they properly recorded or maintained in Plaintiff's personnel file.

52. At the meeting with Captain Savage it was clear that he intended to browbeat and bully Plaintiff into resigning her position. Captain Savage asked and demanded that Plaintiff resign numerous times. Plaintiff refused to resign her position.

53. These alleged disciplinary violations were not a legitimate business justification for Plaintiff's termination, but were mere pretext to justify terminating Plaintiff's employment and to conceal that it was actually sexual and disability discrimination.

54. Plaintiff was a good employee for Defendant. During three months of field training from May to July of 2011, Plaintiff was graded every day by her Field Training Officers, Officers Turner, Dillon, Kridler, and Evans. She always received at least a "satisfactory" score in all categories that were graded. In addition, there were numerous notes and comments made about Plaintiff having a "fantastic attitude," "constantly looking for traffic violations and suspicious activity," and "asking the right questions."

55. Defendant maintains extensive policies and procedures regarding how and when a deputy can be disciplined. Defendant also maintains a progressive discipline policy that details the ways in which disciplinary actions should be escalated for deputies who have prior disciplinary violations.

56. Defendant did not follow its own progressive discipline policy when it terminated Plaintiff's employment.

57. In reality, Plaintiff was terminated in retaliation for her complaints about the harassment she endured at the hands of Officer Pitts and because her injury required her to miss work for two to four weeks.

## COUNT I
**Sexual Harassment – Title VII of the Civil Rights Act of 1964**

58. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

59. During her employment with Defendant, Plaintiff was subjected to unwelcomed sexual harassment by one of Defendant's deputies which created a hostile work environment.

60. The sexual harassment endured by Plaintiff was severe and pervasive.

61. The sexual harassment endured by Plaintiff took place on a daily basis in plain view of many of Defendant's employees including Plaintiff's supervisory Sergeant Burke.

62. Plaintiff complained to her supervisors, Sergeant John Burke and eventually Deputy Sheriff Jon Petrozzi, about the sexually harassing treatment she was receiving.

63. Defendant failed to take adequate or reasonable steps to prevent, correct, or halt the sexually harassing behavior.

64. By the acts and conduct described above, Defendant violated the provisions of the Title VII and disregarded Plaintiff's rights causing her injury.

65. Plaintiff is entitled to damages, including, but not limited to, back pay and benefits, front pay and benefits, compensatory damages, punitive damages, interest, and attorneys' fees.

## COUNT II
### Sexual Harassment – O.R.C. § 4112.02(A), *et seq*.

66. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

67. During her employment with Defendant, Plaintiff was subjected to unwelcomed sexual harassment by one of Defendant's deputies, which created a hostile work environment.

68. The sexual harassment endured by Plaintiff took place on a daily basis in plain view of many of Defendant's employees including her supervisor Sergeant Burke.

69. Plaintiff complained to her supervisors, Sergeant John Burke and eventually Deputy Sheriff Jon Petrozzi, about the sexually harassing treatment she was receiving.

70. Defendant failed to take adequate or reasonable steps to prevent, correct, or halt the sexually harassing behavior.

71. By the acts and conduct described above, Defendant violated the provisions of the O.R.C. § 4112.02(A), and disregarded Plaintiff's rights causing her injury.

72. Plaintiff is entitled to damages, including, but not limited to, back pay and

benefits, front pay and benefits, compensatory damages, punitive damages, interest, and attorneys' fees.

## COUNT III
### Disability Discrimination – Americans with Disabilities Act of 1991

73. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

74. Plaintiff was a person with a disability as defined by the ADA.

75. Plaintiff had a "kissing contusion" in her knee that she suffered during self-defense training she attended at the instruction of Defendant.

76. Plaintiff's injury caused great pain to her knee and her doctor instructed her to take leave from work for four weeks. Plaintiff asked if the doctor would be willing to evaluate her again in two weeks because she wanted to miss as little work as possible and her doctor agreed.

77. Plaintiff could perform the essential functions of her deputy position if she would have been granted her reasonable request for 2-4 weeks off to recover from the injury.

78. However, while Plaintiff was out of work because of her injury, Defendant called her into the office under the pretext that she would be receiving FMLA paperwork that she would have to complete and return.

79. When she arrived at the office she was terminated.

80. Defendant's conduct as described above violated the provisions of the ADA and disregarded Plaintiff's rights causing her injury.

81. Plaintiff is entitled to damages, including, but not limited to, back pay and benefits, front pay and benefits, compensatory damages, punitive damages, interest, and attorneys' fees.

## COUNT IV
### Disability Discrimination – O.R.C. § 4112.02(A), *et seq*.

82. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

83. Plaintiff is a person with a disability as defined by O.R.C. § 4112.02(A)(13).

84. Plaintiff could perform the essential functions of the Deputy position.

85. Plaintiff suffered an adverse employment action when Defendant terminated Plaintiff because of her disability.

86. Defendant's discriminatory conduct violates O.R.C. § 4112.02(A).

87. Because of Defendant's discharge of Plaintiff in violation of this section, Plaintiff is entitled to back wages, front wages, damages, and the employee's costs and reasonable attorney's fees.

## COUNT V
### Retaliation – Title VII of the Civil Rights Act of 1964

88. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

89. Title VII prohibits employers from retaliating against their employees for making reasonable complaints about the types of discrimination prohibited by the statute.

90. Plaintiff complained to her Sergeant, John Burke, about the sexual harassment she was being forced to endure.  Sergeant Burke told Plaintiff that the alleged harasser – Officer Pitts – was his friend and that he was not willing to get involved.

91. Plaintiff's complaint to Sergeant Burke was a protected activity as defined by Title VII.

92. After the harassment continued, Plaintiff went outside of her chain of command to

complain to Deputy Sheriff John Petrozzi.

93. Plaintiff's complaint to Deputy Sheriff Petrozzi was a protected activity as defined by Title VII.

94. After Deputy Sheriff Petrozzi addressed the complaint with Officer Pitts, Officer Pitts threatened Plaintiff because she complained about him.

95. Plaintiff again complained to Sergeant Burke, but again nothing was done to address the harassment or threats.

96. After her complaints about sexual harassment, Plaintiff received adverse treatment from her supervisors and co-workers. Her work was scrutinized more closely than others, she was sent on undesirable assignments, and she was "frozen out" of many conversations and communications with her co-workers.

97. Plaintiff suffered an adverse employment action when she was terminated as a result of her complaints.

98. By the acts and conduct described above, Defendant violated the provisions of Title VII and disregarded Plaintiff's rights causing her injury.

99. Plaintiff is entitled to damages, including, but not limited to, back pay and benefits, front pay and benefits, compensatory damages, punitive damages, interest, and attorneys' fees.

### COUNT VI

### Retaliation – O.R.C. § 4112.02(A), *et seq*.

100. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

101. Ohio law prohibits employers from retaliating against their employees for making

13

reasonable complaints about unlawful discrimination.

102. Plaintiff engaged in a protected activity by complaining to her supervisors about the sexually harassing behavior of her co-worker.

103. Plaintiff suffered an adverse employment action when she was terminated as a result of her complaints.

104. By the acts and conduct described above, Defendant violated the provisions of Ohio's discrimination laws and disregarded Plaintiff's rights.

105. Plaintiff is entitled to damages, including, but not limited to, back pay and benefits, front pay and benefits, compensatory damages, punitive damages, interest, and attorneys' fees.

**WHEREFORE**, Plaintiff Janine Senanayake prays for back pay and benefits, front pay and benefits, in an amount to be determined at trial, compensatory damages, liquidated damages, punitive damages, pre-judgment interest, post-judgment interest, costs, attorneys' fees and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

*/s/ Robert J. Beggs*
*ROBERT J. BEGGS, ESQ. (0002966)*
TRIAL COUNSEL FOR PLAINTIFF
**BEGGS LAW OFFICES CO., LPA**
1675 OLD HENDERSON ROAD
COLUMBUS, OHIO 43220
John.Beggs@BeggsLawOffices.com
614-678-5640 DIRECT DIAL
614-448-9408 FACSIMILE

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

>	*/s/ Robert J. Beggs*
>	ROBERT J. BEGGS, ESQ. (0002966)

4849-5882-1153, v. 1