IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Janine Senanayake,

        Plaintiff,

v.

Delaware County Board of
Commissioners, et al.,

        Defendants.

Case No. 2:15-cv-65

Judge Graham

<u>Opinion and Order</u>

This hostile work environment and retaliation suit under Title VII, 42 U.S.C. § 2000e, *et seq*, is before the court on motions in limine filed by both parties. The court addresses each motion in turn below, followed by a discussion of an area of overlap between the two motions concerning evidence of plaintiff's work performance.

I. **Plaintiff's Motion in Limine**

    A. **The "Kissing Cop" Video**

Plaintiff moves the court to exclude the "Kissing Cop" video from evidence, as well as to exclude any reference to the video, on the grounds that it is irrelevant and prejudicial. Fed. R. Evid. 402; Fed. R. Evid. 403. The video is from the dash camera of a police cruiser in 2009 when plaintiff worked at a prior job for the Perry Township Police Department in Stark County, Ohio. Plaintiff and the Perry Township Chief of Police were in the front seats of the cruiser while they transported a handcuffed suspect, who fell asleep in the backseat, from Cincinnati to Stark County. Plaintiff and the Chief are seen in the video occasionally kissing and caressing each other over a period of about 90 minutes. Short clips of the footage were compiled into a two minute video and posted online to YouTube under the name "Kissing Cop."

Plaintiff likens the video to evidence of a past consensual romantic relationship that typically would be excluded in a civil case. <u>See</u> Fed. R. Evid. 412(b)(2). Defendant responds that the video is relevant to plaintiff's retaliation claim and will help prove the true reason why plaintiff's co-workers allegedly treat her poorly.

1

Evidence of past sexual behavior or reputation may be admitted if its probative value "substantially outweighs" the risk of unfair prejudice or where a victim has placed their reputation in controversy. Fed. R. Evid. 412(b)(2).

The court finds that evidence about the video has significant probative value concerning the issue of why co-workers allegedly disrespected plaintiff or treated her poorly. Plaintiff alleges that deputy Rashad Pitt sexually harassed her in front of co-workers and his open harassment of her had the effect of encouraging other co-workers to demean and disrespect her. She further alleges that as a result of complaining to her supervisor, Sergeant Jon Burke, about the harassment she received from Pitts, she was retaliated against when co-workers treated her poorly, unfairly or rudely. Defendant, however, argues that her co-workers will testify that, to the extent they did not treat plaintiff as favorably as other co-workers, it was because they were aware of the video and considered plaintiff to have brought shame and embarrassment to "the badge of the Sheriff's Office." (Doc. 82 at 3).

The court further finds, however, that showing the video to the jury will create a risk of prejudice to plaintiff. It appears from the video that plaintiff was the one who initiated contact. Plaintiff kisses the Chief on the cheek and caresses his face several times and rests her head on his arm or shoulder numerous times while the Chief is driving the police cruiser at speed on a highway. The Chief caresses her face several times, and they kiss on the lips a couple of times. The Chief appears to be much older than plaintiff, and plaintiff occasionally checks the backseat of the cruiser to check on the sleeping prisoner.

The court provisionally finds that the video does not need to be shown to the jury in order for defendant to support its position. The risk of prejudice to plaintiff likely will be reduced if the parties can stipulate to what the video shows or if witnesses can describe what they saw. For that matter, it is unclear to what extent defendant's witnesses actually saw the video. It may be the case that they simply knew of its existence and generally what it showed. Defendant states in its response brief that "[w]itnesses will testify that once the YouTube video *became known*, they avoided her . . . ." (Doc. 82 at 3) (emphasis added). At this stage before trial, the important point for defendant's position appears to be that co-workers became aware of the video and attached a stigma to plaintiff, regardless of whether they had personally viewed the video.

Accordingly, plaintiff's motion in limine regarding the Kissing Cop video is provisionally granted with respect to the video itself, but denied with respect to testimony about the video. The court reserves final decision on whether the video can be played at trial until witness testimony is

2

heard and the court is in a better position to determine whether the displaying the video to the jury would assist them in evaluating the credibility of witnesses.

B.  Past Lawsuits Brought by Plaintiff

Prior to this case, plaintiff brought two lawsuits against former employers where she had worked in law enforcement positions. In one suit against the Township of Montville, Ohio, she alleged that she had been subjected to sexual harassment by a training officer and subjected to a hostile work environment. (Senanayake Dep. at 30-33, 41). In her deposition in this case, plaintiff described the sexual harassment at Montville Township as consisting of one incident of physical touching, comments about her appearance and requests that she go out on dates. (Id. at 30-33). She described the hostile work environment as consisting of demeaning and degrading comments about women's bodies. (Id. at 41). Plaintiff testified that the she suffered emotional distress from the events at issue in her suit against Montville Township. (Id. at 49-50). Plaintiff voluntarily dismissed the suit against Montville Township after the Kissing Cop video "came out in the news" because the video becoming public was "an experience that really was pretty traumatic" and she "was not in a frame of mind to go through with litigation." (Id. at 41-44).

In the other lawsuit, plaintiff sued Perry Township, alleging that her termination (which occurred after the release of the Kissing Cop video) was an act of gender discrimination insofar as she was fired and the Chief was allowed to resign. See Senanayake v. Perry Township, No. 5:13-cv-265 (N.D. Ohio 2013). The case settled, apparently with Perry Township agreeing to allow plaintiff to resign. (Senanayake Dep. at 64, 69-70). Plaintiff stated in her deposition in this case that the she suffered emotional distress from the events at issue in her suit against Perry Township and that she saw a psychologist for counseling. (Senanayake Dep. at 60-62). She experienced anxiety and depression as a result of the Perry Township situation. (Id. at 65, 67).

Plaintiff argues that evidence about her prior litigation should be excluded because the facts of those cases do not make it more or less likely that Pitts harassed her or that Burke retaliated against her. She further argues that evidence about the facts of the other cases could confuse the jury about what happened in this case. And she contends that evidence of her prior litigation will improperly enable defendant to portray her as a serial litigator.

Defendant argues that evidence about the emotional distress which she allegedly suffered from the events at issue in the prior two cases is relevant to a damages determination in this case. Defendant contends that the jury must be allowed to determine how much emotional distress was caused by defendant's conduct and how much was caused by prior events involving alleged conduct

3

similar to that alleged against defendant. Further, defendant argues that evidence of plaintiff's past lawsuits should be admitted under Rule 406 as evidence of a habit – that of filing lawsuits for harassment and discrimination after being terminated for poor work performance.

The court finds that defendant should have the opportunity to prove that factors outside of defendant's conduct caused or contributed to plaintiff's emotional distress. See In re Welding Fume Prod. Liab. Litig., No. 1:03-CV-17000, 2010 WL 7699456, at *79 (N.D. Ohio June 4, 2010) (noting that defendants are generally entitled to show alternative causes of emotional distress). Plaintiff was deposed in her suit against Perry Township more than one year after she was terminated by defendant. In that deposition, she testified that the Perry Township situation (referring both to the release of the Kissing Cop video and her subsequent firing) caused anxiety, depression and sleeping problems. (Doc. 87-2 at 160-172). She took up to nine Tylenol PM tablets per day, lost weight and "was close to being an alcoholic." (Id. at 163). She testified that the Perry Township situation was "[a] thousand times worse" than the situation surrounding her termination at the Delaware County Sheriff's Office (DCSO). (Id. at 162) ("I don't have any anxiety about what happened at Delaware. Zero."). She testified that she continued to suffer depression and anxiety as a result of the Perry Township situation. (Id. at 172).

Accordingly, if plaintiff introduces evidence at trial regarding her emotional distress damages, defendant will be allowed to cross-examine her as to the cause or causes of her emotional distress. The court, however, rejects defendant's contention that plaintiff's past litigation can also be used to show a habit of filing lawsuits. Evidence of a plaintiff's litigiousness is generally allowed only where a defendant can establish that the prior suits were fraudulent or exaggerated. See Outley v. City of New York, 837 F.2d 587, 591-94 (2d Cir. 1988). Here, defendant has made no such showing. Thus, at trial the court will limit defendant's reference to plaintiff's lawsuits, such that the focus is on the emotional distress that plaintiff experienced from the events at issue in prior suits, and not on the fact that plaintiff filed those lawsuits.

**C.   Past Romantic Relationships**

Plaintiff moves to exclude evidence of all consensual romantic relationships in which she has been involved, except for her relationship with Delaware County Sheriff Walter Davis. Defendant does not oppose this prong of plaintiff's motion in limine insofar as it concerns evidence beyond the consensual encounter reflected in the Kissing Cop video.

4

The court agrees that such evidence is irrelevant and should be excluded. Thus, aside from testimony about the Kissing Cop video and evidence of her consensual relationship Sheriff Davis, all other evidence of plaintiff's romantic relationships is excluded.

### D. Evidence of Facts Surrounding Sheriff Davis's Resignation

In April 2012, Sheriff Davis resigned following media reports that he was being investigated for misusing public funds to pay for plaintiff to accompany him on an out-of-state trip. Plaintiff argues that evidence concerning Davis's resignation is irrelevant and prejudicial. Defendant has not opposed this prong of plaintiff's motion in limine. Accordingly, the court excludes this evidence.

## II. Defendant's Unopposed Motion in Limine

Defendant's motion in limine concerns four topics, aside from evidence regarding plaintiff's work performance. Plaintiff did not file a brief in opposition to defendant's motion.

### A. Existence of Consensual Romantic Relationships at the Workplace

Defendant moves to exclude evidence of the existence of consensual romantic relationships among co-workers at DCSO. Defendant relies on Hughes v. Goodrich Corp., No. 3:08CV263, 2010 WL 3746598, at *13 (S.D. Ohio Sept. 21, 2010), where the court rejected an attempt by plaintiff to offer evidence of the past consensual workplace relationships in which her alleged co-worker/harasser had been engaged. The court reasoned that the existence of past consensual and permissible workplace relationships did not make it more likely that the alleged harasser was willing to engage in harassing or inappropriate behavior toward plaintiff.

The court agrees and finds that evidence of consensual romantic relationships among co-workers at DCSO is irrelevant and will be excluded.

### B. Deputy Pitts' Alleged Conduct toward other Women

Defendant next moves to exclude evidence regarding separate altercations that Pitts had with an ex-wife and a former girlfriend. His ex-wife accused him of pulling her hair and pushing her. (Pitts Dep. at 42-43). The former girlfriend accused him of stalking her. (Id. at 47). Both incidents were reported to the police, and Pitts denied the accusations. (Id. at 43).

The court finds that evidence of these alleged other acts should be excluded under Rule 404(b). These incidents occurred outside the time of plaintiff's employment at DCSO and there is no evidence suggesting that plaintiff was aware of the incidents, such that they could have contributed to her perception of the hostility of her work environment. Cf. Hawkins v. Anheuser-

Busch, Inc., 517 F.3d 321, 335-37 (6th Cir. 2008) (discussing when other acts of harassment can be used as evidence of a hostile work environment).

### C. Discipline of Sergeant Burke

After the term of plaintiff's employment, Sergeant Burke encountered disciplinary problems that resulted in his demotion to deputy. (Burke Dep. at 10). The court agrees with defendant's motion that evidence regarding Burke's subsequent disciplinary issues is irrelevant to plaintiff's claims and thus will be excluded.

### D. Plaintiff's Termination

Defendant argues that evidence of plaintiff's termination from DCSO should be excluded because plaintiff's claims of retaliatory termination and sex discrimination have been dismissed. The court agrees and thus evidence of plaintiff's termination will be excluded.

## III. Evidence of Plaintiff's Work Performance

Both parties have moved to exclude evidence regarding plaintiff's work performance. Plaintiff moves to exclude evidence that she was a "bad employee." This evidence includes the End-of-Probation Review (which summarized her "Disciplinary Issues" and other "Documented Incidents" in which she was involved), as well as reports and emails documenting her deficiencies as a deputy sheriff. Plaintiff argues that this evidence is not relevant because the court granted summary judgment against her claims for retaliatory termination and sex discrimination.

Defendant seeks to exclude six exhibits identified as Exhibits 5 through 10 on plaintiff's exhibit list attached to the Joint Final Pretrial Order. These exhibits relate to incidents that are also included among the Disciplinary Issues and Documented Incidents in the End-of-Probation Review. Defendant offers the same reasoning as plaintiff offers in her motion – that this evidence is not relevant because plaintiff's claims of retaliatory termination and sex discrimination have been dismissed.

In response to the plaintiff's motion in limine, defendant agrees that the trial "should not get bogged down in a litany of [plaintiff's] performance and disciplinary issues." (Doc. 82 at 7). In her reply brief, plaintiff states that "neither side should be permitted to use evidence concerning allegations of substandard work performance." (Doc. 85 at 2-3).

It appears that the parties are substantially in agreement that they will not be submitting evidence regarding plaintiff's work performance. The court notes, however, that within the larger body of evidence of plaintiff's work performance, there exists a small subset of evidence pertaining

specifically to any critiques or evaluations that plaintiff's supervisor, Sergeant Burke, authored. One example is an email string in which Burke notified plaintiff of "missing or uncompleted reports" for which she was responsible. (Doc. 61-80). Such evidence is relevant to plaintiff's assertion that Burke retaliated against her by closely scrutinizing and being unduly critical of her work. Although it is unclear whether plaintiff intends to offer this evidence at trial,[1] if she does defendant will be afforded an opportunity to prove that Burke was not retaliating against her, and the court will address at that time any objections to specific exhibits or testimony.

## IV. Conclusion

For the reasons stated above, plaintiff's motion in limine (doc. 80) is granted in part and denied in part, and defendant's motion in limine (doc. 79) is granted in part and denied in part.

                                                           s/ James L. Graham  
                                                           JAMES L. GRAHAM  
                                                           United States District Judge

DATE: September 17, 2017

---

[1] Plaintiff's retaliation claim does not rest solely on the assertion that Burke was unduly critical of her work. She further asserts that after she complained of Pitts's harassment, Burke and Pitts took on a cold and intimidating demeanor toward her, Pitts threatened to withhold back-up assistance because she was a "snitch," Burke unfairly resisted her efforts to take leave, she was given undesirable assignments, and she was "frozen out" of conversations by her co-workers.